**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**STEPHEN HAGUEWOOD, And
MARY BETH HAGUEWOOD**                                                                      **PLAINTIFFS**

**VERSUS**                                                                      **CIVIL ACTION NO. 2:06cv79KS-MTP**

**GANNETT RIVER STATES
PUBLISHING CORPORATION D/B/A
*THE HATTIESBURG AMERICAN*, ET AL.**                                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#34]** filed on

behalf of the defendants.  The court, having reviewed the motion, the response, the

briefs of counsel, the authorities cited, the pleadings and exhibits on file, and being

otherwise fully advised in the premises finds that the motion is well taken and should be

granted.  The court specifically finds as follows:

## FACTUAL BACKGROUND

Plaintiff Stephen Haguewood ("Haguewood"), is a former 20-year public servant

and Assistant Superintendent of Schools in the Lamar County School District.   In 2001,

Haguewood purchased a "spy camera"on the internet.  He concealed the spy camera in

a fake bouquet of flowers on the bedside table in the bedroom of his minor

stepdaughter, and secretly recorded her in a state of undress.  Haguewood watched

and then hid the videotape of his stepdaughter undressing.  Haguewood's then-wife,

Tammy, discovered the recording and spy camera and reported it to law enforcement

authorities.

After discovery of the camera, Haguewood was investigated by the Public

Integrity Division of the Attorney General's Office and he resigned his position with the

Lamar County Schools.  In February of 2002, a Lamar County grand jury indicted

Haguewood for secretly photographing his stepdaughter with "lewd and licentious and

indecent intent" in violation of Miss. Code Ann. § 97-29-63.  Haguewood pled guilty to

the crime charged and was sentenced to five years supervision, with the first two years

to be served under house arrest.

Subsequently, in June of 2004, the Department of Corrections discovered that

Haguewood's computer had been used to access prohibited web sites in violation of the

conditions of his house arrest.  His house arrest was revoked and he was incarcerated

to serve the remainder of his sentence.   Haguewood's violation of the terms of his

house arrest and consequential imprisonment was reported by *The Hattiesburg*

*American* on June 24, 2004, in an article authored by Nikki Davis Maute.

By November of 2004, Haguewood was eligible for parole.  Lamar County Sheriff

Danny Rigel and others wrote the parole board to protest Haguewood's early release

and on November 21, 2004, *The Hattiesburg American* reported that Sheriff Rigel had

written such a letter.  The November 21 article referred to the charge to which

Haguewood had pled guilty as "video voyeurism," and it mistakenly quoted Sheriff Rigel

as saying that Haguewood's "family and friends" objected to his early release from

prison.  The Newspaper explained in a correction published on November 23, 2004,

that the sheriff had actually said that *the victim's* "family and friends" objected to Haguewood's parole

As a result of the article, Haguewood and his current wife, Plaintiff Mary Beth Haguewood ("Mary Beth") sued the Newspaper, seeking damages for defamation, false light, intentional and/or negligent infliction of emotional distress and "outrageous conduct,"claiming that the November 21 article's characterization of Haguewood's crime as "video voyeurism" and the misquote of Sheriff Rigel were false and defamatory and that such was a pattern of outrageous conduct when paired with the June 24 article.

The court has previously dismissed defendant Maute by separate order. Defendant Hunsperger has never been served.  The remaining defendants have moved for summary judgment asserting that this suit has no merit because the Newspaper's report was true or substantially true and, as a matter of law, was not defamatory. Furthermore, the defendants contend that even if plaintiffs could prove falsity, the Newspaper did not publish the challenged statements with actual malice and that for essentially the same reasons, plaintiffs have no emotional distress claims.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The

existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5ᵗʰ Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5ᵗʰ Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material." *Id*.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5ᵗʰ Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the

Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

　　While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

**ANALYSIS**

**Article of June 24, 2004**

　　The plaintiffs originally complained about an article appearing in *The Hattiesburg*

*American* on June 24, 2004, authored by Nikki Davis Maute, in addition to the

November 21, 2004, article now at issue.  Following removal of the case, the plaintiffs

moved to remand alleging that they had stated a viable cause of action against Maute.

On August 30, 2006, this court ruled that Maute had been fraudulently joined and that

the plaintiffs had no cause of action against her based upon the June 24, 2004, article.

Specifically, the court found that the plaintiffs had no claims for libel, defamation,

invasion of privacy or other intentional torts because they are barred by the statute of

limitations.  The court found further that the plaintiffs had no claims for negligent

infliction of emotional distress against Maute because such is not a recognized tort in

Mississippi as to non-commercial publications.

6

The defendants argue that the same reasoning employed as to Maute on the remand issue now applies to the remaining defendants regarding the June 24 article, *i.e.*, if Maute cannot be liable for writing the June 24, 2004, article, the Newspaper cannot be liable for its publication.  However, this argument is not in line with the court's previous order.  The court has indeed decided that the plaintiffs have no cause of action based upon the June 24, 2004, newspaper article concerning defendant Maute.  However, contrary to the defendants' assertions otherwise, the court also stated that the June 24 article may constitute evidence of a continuing tort to the extent the plaintiffs are attempting to prove intentional conduct on the part of the other defendants.  Thus, the court must also consider the June 24 article in addition to the November 21 article.

## Defamation

To establish a claim for defamation, the plaintiffs must prove the following:

(1) a false and defamatory statement was made concerning the plaintiff[s]; (2) there was an unprivileged communication to a third party; (3) the publisher was [at least] negligent in publishing the defamatory statement; (4) the plaintiff suffered damages resulting from publication of the defamatory statement.

*Mitchell v. Random House, Inc.*, 703 F.Supp. 1250, 1255 (S.D. Miss. 1988), *aff'd*, 865 F.2d 664 (5th Cir. 1989). *See also Pittman v. Gannett River States Pub. Corp.*, 836 F.Supp. 377, 381 (S.D. Miss. 1993).  "The threshold question in a defamation suit is whether the published statements are false."  *Franklin v. Thompson*, 722 So.2d 688, 692 (Miss. 1998).  The resolution of this question is an issue for the court.  *Gales v.*

*CBS Broadcasting, Inc.*, 269 F.Supp.2d 772, 778 (S.D. Miss. 2003), *aff'd*, 124

Fed.Appx. 275.  Truth is a complete defense to an action for defamation.  *Blake v.*

*Gannett Co., Inc.*, 529 So.2d 595, 602 (Miss. 1988).

As to the first statement from the November 21 article of which the plaintiffs

complain, the article said Haguewood pled guilty to "video voyeurism."  The defendants

contend that this statement is not actionable defamation because it is true.  The facts

are undisputed that Haguewood made a secret videotape of his stepdaughter.  The

2002 indictment of Haguewood charged that he committed a crime related to the

videotaping of his stepdaughter by

> …without her consent, and did place a "spy camera" in the said private
> bedroom of A.B., and did by use of the said "spy camera" secretly film and
> videotape the said A.B. in a state of undress, which filming and
> videotaping was unknown to the said A.B., and without her permission,
> which the Defendant did for the lewd, licentious and indecent purposes of
> the said Defendant in spying upon the said A.B., the occupant of said
> private bedroom, in a state of undress, contrary to and in violation of
> Section 97-29-63 of the Mississippi Code of 1972, as amended….

Several months after he was indicted, Haguewood pled guilty to that charge,

stating under oath that the facts stated in the charge were true and correct.  Moreover,

not only did Haguewood admittedly make the video, he has also admitted that he

watched the tape "once or twice."

Haguewood secretly made, and then watched, a videotape of his stepdaughter

undressing in her bedroom and he admitted at his sentencing hearing that he had done

so "with a lewd and licentious and indecent intent."  Given these undisputed facts, there

can be no doubt that the Newspaper's characterization of the crime to which

Haguewood pled guilty as "video voyeurism" was both fair and accurate.  While not the

precise charge to which Haguewood pled guilty to, the Newspaper's description of this charge as "video voyeurism" was an appropriate characterization of the charge and was true and not defamatory.

As to plaintiffs' second point of contention – the misquotation of Sheriff Danny Rigel occurring in the November 21 article – substantial truth is also a complete defense to plaintiffs' defamation claims. *Armistead v. Minor*, 815 So. 2d 1189, 1194 (Miss. 2002); *Smith v. Byrd*, 83 So.2d 172, 174 (Miss. 1955). The defendants contend that in examining the article, the headline or portions of the story should not be isolated, but must be considered together and construed as a whole citing *Blake*, 529 So.2d at 604-06. The court concurs in this assessment.

Reading the November 21 article as a whole, the isolated quotation about which the plaintiffs complain is substantially true. The gist of the article was that one or more elected officials in Lamar County had written a letter to the State Parole Board objecting to Haguewood's early parole, at least in part because of community opposition. Sheriff Rigel was quoted as saying that Haguewood's family and friends opposed his parole when what he actually said was that family and friends of *the victim*, who was herself once a part of Haguewood's family and household, opposed Haguewood's parole.

The larger point of the story was that Sheriff Rigel had objected to Haguewood's possible parole and was indisputably true. The plaintiffs point out that the quotation was technically inaccurate in that the sheriff actually said that the "family and friends" of Haguewood's former stepdaughter, rather than Haguewood's "family and friends" objected to parole. This misquote, while misleading, does not diminish the substantial truth of the article. The court finds, more importantly, that when one considers the

whole truth about Haguewood, the published words do not defame him or injure his reputation more than the actual truth would have.

Additionally, to the extent plaintiff Mary Beth Haguewood argues that she was independently defamed by the November 21 article's reference to Haguewood's "family and friends," under Mississippi law, "…there are two restrictions on an action for defamation that must be strictly enforced.  First, the words used must have been clearly directed toward the plaintiff and, second, the defamation must be clear and unmistakable from the words themselves and not the products of innuendo, speculation or conjecture."  *Johnson v. Delta Democrat Times Publishing Company*, 531 So. 2d 811, 813 (citing *Ferguson v. Watkins*, 448 So. 2d 271 (Miss. 1984)).  The collective statements used in the November 21 article are not clearly directed toward Mary Beth, nor is any alleged defamation clearly and unmistakably directed toward her.  Therefore, the court finds that they cannot constitute an independently actionable defamation as to Mary Beth.

Finally on the defamation issue, the defendants argue that even assuming the Newspaper published any false and defamatory statement, it did not do so with "actual malice," and absent clear and convincing proof of actual malice, the plaintiffs cannot prevail since Haguewood is a public official/figure.

Courts in other jurisdictions have specifically held that persons in positions such as Haguewood's are public figures.  *Beck v. Lone Star Broad Co.*, 970 S.W. 2d 610, 614-15 (Tex. App. 1998) (holding assistant superintendent for business services of school district a public official); *Purvis v. Ballantine*, 487 S.E. 2d 14, 17 (Ga. Ct. App. 1997) (holding superintendent public official because he routinely made personnel,

administrative and budgetary decisions affecting the public school system); *Scott v. News-Herald*, 496 N.E. 2d 699, 703 (Ohio 1986) (holding school superintendent was public official because he was responsible for implementing policies, expected to serve as a role model for students, and exercised supervisory authority over students); *Kapiloff v. Dunn*, 343 A.2d 251, 258 (Md. Ct. Spec. App. 1975) (holding principal public official since suitability for the position was a matter of public concern).

Moreover, these opinions are fully consistent with Mississippi decisions applying similar reasoning. *See Ethridge v. North Mississippi Communications, Inc.*, 460 F.Supp. 347, 352 (N.D. Miss. 1978) (city police officer public figure); *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002) (former sheriff and state trooper public figure); *Journal Pub. Co. v. McCullough*, 743 So.2d 352, 361-62 (Miss. 1999) (court clerk public figure); *Newson v. Henry*, 443 So.2d 817, 823 (Miss. 1983) (former sheriff public figure). The court finds that Haguewood was the Assistant Superintendent of the Lamar County School district and therefore a public figure as a matter of law.

Since Haguewood is a public official/figure, he must prove through clear and convincing evidence that the Newspaper published the challenged statements with "actual malice" –*i.e.*, that the defendants knew the statements were false or published the challenged statements in reckless disregard of the truth. *Stegall v. WTWV, Inc.*, 609 So.2d 348, 351-52 (Miss. 1992). Even considering the June 24 article, the plaintiffs have come forward with no such evidence and their failure to do so is fatal to their claims, even if the court had found the statements to be false or defamatory.

**False Light Claims**

The court further finds that the plaintiffs have no false light claims for the same reasons they have no defamation claims.  The elements of a false light claim under Mississippi law are (1) public disclosure of facts, (2) which are false, (3) about the plaintiff, and (4) that are offensive.  *See Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So.2d 77, 79-81 (Miss. 1986).  As with the plaintiffs' defamation claim, truth is a complete defense to false light.  *Id.* at 80.  *See also Cook v. Mardi Gras Casino*, 697 So.2d 378, 382-83 (Miss. 1997); *Blake*, 529 So.2d at 606 (false light claim dismissed on same grounds and claim for libel).  Likewise, the "of and concerning" and "no libel by implication or innuendo" requirements are applicable to false light claims. *Mitchell v. Random House*, 865 F.2d 664, 672 (5th Cir. 1989); *Mize v. Harvey Shapiro Enterprises, Inc.*, 714 F.Supp. 220, 226-27 (N.D. Miss. 1989).  For these reasons, consistent with the defamation analysis above, the defendants cannot be held liable on a false light claim for reporting that Haguewood pled guilty to "video voyeurism."  Further, with respect to Mary Beth's false light claim, not only is she not identified or otherwise referenced in the articles, she has admitted that she is not a subject of them.

**Negligent Infliction of Emotional Distress**

The court has ruled that the articles were non-commercial publications.  As recognized in this court's prior order denying remand in this case, Mississippi law does not allow recovery for negligent infliction of emotional distress based on a non-commercial publication.  Order, Docket Entry No. 12; *See also Mitchell v. Random*

*House*, 865 F.2d 664, 672 (5th Cir. 1989); *Pierce v. The Clarion Ledger*, 433 F.Supp.2d 754, 760 (S.D. Miss. 2006). Plaintiffs have admitted in their response to this motion that this is correct and thus have no cause of action under any negligent infliction of emotional distress theory.

**Intentional Infliction of Emotional Distress**

The plaintiffs have re-cast the allegations of their complaint in the alternative by asserting counts for "intentional infliction of emotional distress" and "outrageous conduct" in an effort to circumvent well established, applicable defenses to their defamation claims. One court in the Southern District has already recognized that a plaintiff cannot do that. In *Mitchell v. Random House*, the district court determined that the plaintiff had no claims for defamation or false light as a matter of law and that her intentional infliction claim was based upon precisely the same facts as were her defamation and false light claims. 703 F.Supp. at 1259. The court held that the "essence"of her complaint was defamation, thus "…her attempt to state a separate claim for emotional distress is superfluous." *Id.*

Regardless, Mississippi courts have recognized that a claim for the intentional infliction of emotional distress exists separate and apart from negligence claims. However, "[m]eeting the requisite elements of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Jenkens v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss.1993). The Fifth Circuit acknowledged in *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 548 (5th Cir. 1996), that

> Mississippi courts recognize intentional infliction of emotional distress when the defendant's conduct. . . evokes outrage or revulsion. As we have stated before, it is difficult to prove intentional infliction of emotional distress: it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.*(citations omitted).  Moreover, intentional infliction of emotional distress claims do not lie for "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.  *Hunt v. Wal-Mart*, 2006 WL 231632, at *8 (S.D. Miss. 2006).  Based on the foregoing, the non-defamatory statements with which the plaintiffs take offense could not be seen as "outrageous" conduct by an average member of the community.

## CONCLUSION

Based on the foregoing, the court concludes that the information contained in the June 24, 2004, and November 21, 2004, articles was not false or defamatory to the plaintiffs.  Nor did the information contained therein hold the plaintiffs in a false light. Further, the plaintiffs have failed to offer proof that the defendants intentionally inflicted emotional distress on them.  The court further finds that even if it were to find the articles defamatory, defendant Stephen Haguewood was a public official/figure and that it was incumbent upon the plaintiffs to offer clear and convincing evidence that the defendants acted with malice in publishing the articles and that the plaintiffs have failed to meet this burden.  For the reasons stated, all of the plaintiffs' claims are due to be dismissed.

IT IS THEREFORE ORDERED AND ADJUDGED that the  Motion for Summary

Judgment **[#34]** filed on behalf of the defendants is Granted and the plaintiffs' complaint

is dismissed with prejudice and that any other pending motions are denied as moot.

A separate judgment shall be entered herein in accordance with Rule 58,

Federal Rules of Civil Procedure.

SO ORDER AND ADJUDGED this the 11th day of June, 2007.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE




_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE